# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISON

JANE DOE,                                                    Docket No. 23-CV-
                                                             Judge
        Plaintiff,                                          Mag.

v.

LORENZO LADALE MURRAY,
BRIAN GRAMM,
EDUSTAFF, LLC,
BOYS AND GIRLS CLUB OF THE MUSKEGON LAKESHORE,
 and MUSKEGON PUBLIC SCHOOLS.

        Defendants.

_____/

James B. Rasor (P43476)
Attorney for Plaintiff
**RASOR LAW FIRM, PLLC**
201 E. Fourth Street
Royal Oak, Michigan 48067-3846
PH:   (248) 543-9000
FAX: (248) 543-9050
jbr@rasorlawfirm.com

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

   **NOW COMES** Plaintiff JANE DOE, by and through her counsel,

RASOR LAW FIRM, PLLC, and complains of the Defendants as follows:

### PARTIES, JURISDICTION, AND VENUE

   1.    Plaintiff JANE DOE is a resident of Muskegon, Michigan. The

identity of Plaintiff is well known to the Defendants.

1

2.      Upon information and belief, Defendant Lorenzo Murray (hereinafter MURRAY) is an incarcerated individual in the Ionia Correctional Facility located in Ionia County, Michigan. (Michigan Department of Corrections Facility).  He is being sued in his official and individual capacities.

3.      Defendant Muskegon Public Schools ("MPS") is a public school district in Muskegon County, Michigan.

4.      Upon information and belief, Defendant Brian Gramm ("GRAMM") is a resident of the City of Muskegon, Muskegon County, State of Michigan. He is being sued in his official and individual capacities.

5.      Defendant Edustaff, LLC ("EDUSTAFF") is a substitute school-staff provider to public schools with a principal place of business in Grand Rapids, Michigan. EDUSTAFF systematically and continuously conducts business in the Western District of Michigan.

6.      Defendant Boys and Girls Club of the Muskegon Lakeshore ("BOYS AND GIRLS CLUB") is an after-school program provider located in Muskegon County, Michigan.

7.      At all times relevant to this Complaint, Defendant MURRAY was an employee and/or agent of Defendant MPS and Defendant BOYS AND GIRLS CLUB through Defendant EDUSTAFF, LLC.

2

8. Actions alleged herein by Defendant MURRAY were taken under color of law and in the course and scope of his employment and/or agency with Defendant MPS.

9. The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

10. At all relevant times set forth herein, Defendants acted in concert as an agent of one another.

11. The amount in controversy exceeds $75,000.00, exclusive of costs, interest, and attorney fees, and jurisdiction is otherwise proper in this Court.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the causes of action alleged arose entirely within this District.

## COMMON ALLEGATIONS

13. Plaintiff incorporates each and every preceding paragraph as though fully restated herein.

14. At all relevant times, each Defendant, in their dealings with the Plaintiff, acted under the color of state and federal law.

15. Under the substantive component of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, Plaintiff

3

had the right to, and a liberty interest in, personal security and bodily integrity, which right and liberty interest includes the right to be free from abuse at the hands of a public-school employee.

16.     Plaintiff's rights to and liberty interest in personal security and bodily integrity were clearly established at the times of the events complained of and these rights and liberty interests were, or should have been, well known by the Defendants.

17.     Under the procedural component of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, Plaintiff had a property right to a free, appropriate, and least restrictive educational opportunity, which right and property interest includes the right to be free from abuse at the hands of a public-school employee.

18.     Plaintiff's rights to and property interest in a free, appropriate, and least restrictive educational opportunity were clearly established at the times of the events complained of, and these rights and property interests were well known by the Defendants.

19.     Plaintiff JANE DOE was born on March XX, 2004, and is currently under the age of 19, and at all relevant times was a student in the Defendant MPS at Nelson Elementary School.

4

20. The BOYS AND GIRLS CLUB affiliated with MPS as an afterschool program provider, which Plaintiff JANE DOE participated in at relevant times, at the location inside of Nelson Elementary School in Muskegon, Michigan.

21. Upon information and belief, Defendant MURRAY began work with Defendant MPS and/or Defendant BOYS AND GIRLS CLUB, hired through EDUSTAFF, LLC, in approximately 2014, as a "youth safety advocate" and basketball coach.

22. Throughout his approximately 4-year long career with Defendants, Defendant MURRAY was an inappropriate, physically and verbally abusive person who abused his position of authority to sexually assault students.

23. This trait was known and/or should have been known to the Defendants, which demonstrated their knowledge by ignoring several prior reports about similar behavior by Defendant MURRAY.

24. Despite the knowledge of abuse by the Defendant MURRAY, Defendants refused to intervene or act to protect the students in their schools, including the Plaintiff, subjecting her to further harm.

5

25. Defendants' officials and/or agents turned a blind eye to Defendant MURRAY'S conduct until forced to take action after a felony charge was filed against MURRAY.

26. Defendant MURRAY was responsible for elementary-aged children through employment and/or agency with Defendants at all relevant times.

27. Defendant MURRAY had a private office in which he performed his duties at MPS, but he was also assigned to be a girls' basketball coach, and was also assigned to administer/supervise afterschool activities by and through Defendants MPS and the BOYS AND GIRLS CLUB.

28. During the years prior to and congruent with the relevant time periods herein, Defendant MPS received at least two other complaints about similar conduct by Defendant MURRAY, which were inadequately investigated by Defendant MPS.

29. Indeed, the other complaints submitted to MPS involved inappropriate touching of elementary school girls at Nelson Elementary by Defendant MURRAY, but the parents of these girls were told that due to a lack of evidence, no action could be taken.

6

30. Upon information and belief, Defendants failed to report the prior complaints to Child Protective Services or law enforcement, despite its legal duty to do so.

31. Plaintiff JANE DOE was sent to Defendant MURRAY for counseling and/or discipline on multiple occasions through 2016 and 2017.

32. During these "counseling" sessions, MURRAY walked behind Plaintiff and touch her shoulders and back, before reaching around and touching her breasts.

33. Then, MURRAY made Plaintiff stand up and undo her pants, pulled them down, and violently penetrated her genitals.

34. When MURRAY was done sexually assaulting her, he would tell her to dress herself and return to class immediately. She would return to class crying, and often, bleeding or having other discharge from her genitals.

35. No teachers or other staff of MPS took notice of this distress, offered any assistance, or inquired as to why she was so distraught after returning from MURRAY's office.

36. Plaintiff was raped by MURRAY approximately eight times in this manner, at Nelson Elementary School, an MPS school.

37. MURRAY was also an afterschool monitor for the BOYS AND GIRLS CLUB located in the basement of Nelson Elementary School.

7

38. MURRAY sexually assaulted Plaintiff, by way of vaginal penetration, at least other two times at the BOYS AND GIRLS CLUB during the relevant time period.

### PLAINTIFF DISCLOSED, MURRAY WAS PROSECUTED

39. In September 2018, Jane Doe disclosed to middle school counselor Wendy Rush that she had been repeatedly sexually assaulted by Defendant MURRAY. Ms. Rush contacted the police to report the disclosure.

40. No report was filed with Michigan Child Protective Services or law enforcement, as required by law, evidencing deliberate indifference by the Defendants and its employees for the safety and well-being of the children, including Plaintiff.

41. When police became involved subsequent to Plaintiff's disclosure, officers contacted Dr. Brian Gramm, Principal of Nelson Elementary School, where MURRAY was still employed.

42. Principal GRAMM advised police that MURRAY had not shown up to work, and further, that MURRAY was facing disciplinary actions over an "unrelated incident" that occurred the day prior.

43. Principal GRAMM also confirmed to the police that he had spoken with his staff, who stated that there was another case investigated two years ago (meaning, approximately 2016) where it was alleged that MURRAY

8

had fondled the breasts of another female elementary school student. GRAMM further stated that the allegations had been 'dismissed' due to lack of evidence, though he was not sure if the matter was investigated by police or Child Protective Services.

44. MURRAY was charged with Criminal Sexual Conduct in the First Degree (person under 13) on or about July 18, 2019, by the Muskegon County Prosecutor's Office.

45. Ultimately, MURRAY plead guilty as charged and was sentenced on or around March 9, 2020.

46. The trauma of the repeated sexual assaults has and will haunt Plaintiff for years to come. She has experienced anxiety, fright and shock, panic attacks, depression, loss of appetite, loss of sleep, embarrassment, mortification, physical pain and suffering, mental anguish, and denial of social pleasures.

47. To make matters worse, Plaintiff attended Muskegon High School (MPS) during the criminal prosecution of MURRAY, and was placed in classes with MURRAY's multiple children, who repeatedly bullied and harassed her for cooperating in the prosecution of their father.

48. MPS did nothing to mitigate the harassment or otherwise protect Plaintiff.

9

49.    At no time was there a pedagogical justification for Defendant MURRAY's use of force toward Plaintiff.

50.    Defendant MURRAY's use of force was excessive and far more intrusive than necessary to meet any legitimate objective.

51.    Defendant MURRAY's use of force on the Plaintiff was malicious and sadistic and had the sole purpose of causing harm to the Plaintiff.

***Defendant MPS Failed to Provide Essential Training and Education on Sexual Abuse of Students by School Employees***

52.    Over two decades ago, the U.S. Supreme Court determined that schools may be held liable in private Title IX actions for monetary damages when they are deliberately indifferent to teacher-against-student sexual misconduct and harassment, and stated:

> The number of reported cases involving sexual harassment of students in schools confirms that harassment unfortunately is an all too common aspect of the educational experience. **No one questions that a student suffers extraordinary harm when subjected to sexual harassment and abuse by a teacher**, and that the teacher's conduct is reprehensible and undermines the basic purposes of the educational system.[1]

53.     Nearly a quarter of a century ago, the Sixth Circuit notified all public schools, including Defendant District (MPS), that teacher-against-

RASOR LAW FIRM, PLLC

---

[1] *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 292 (1998) (emphasis added).

student sexual abuse violates the student's Fourteenth Amendment Due

Process rights, holding:

> Upon consideration, we hold that a schoolchild's right to personal security and to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee. The substantive component of the Due Process Clause protects students against abusive governmental power as exercised by a school. To be sure, the magnitude of the liberty deprivation that sexual abuse inflicts upon the victim is an abuse of governmental power of the most fundamental sort; it is an unjustified intrusion that strips the very essence of personhood. **If the "right to bodily integrity" means anything, it certainly encompasses the right not to be sexually assaulted under color of law.** This conduct is so contrary to fundamental notions of liberty and so lacking of any redeeming social value, that no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause.[2]

54.     In January 2001, the U.S. Department of Education Office for

Civil Rights ("OCR") issued *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or ThirdParties*

("2001 Guidance"), informing all U.S. schools receiving Federal financial

assistance, including Defendant District, that "[p]reventing and remedying

sexual harassment in schools is essential to ensuring a safe environment in

which students can learn." OCR stated:

> Sexual harassment is unwelcome conduct of a sexual nature. Sexual harassment can include unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual

---

[2] *Doe v. Claiborne Cnty.*, 103 F.3d 495, 506-07 (6th Cir. 1996) (emphasis added).

RASOR LAW FIRM, PLLC

nature. Sexual harassment of a student can deny or limit, on the basis of sex, the student's ability to participate in or to receive benefits, services, or opportunities in the school's program. Sexual harassment of students is, therefore, a form of sex discrimination prohibited by Title IX[.]

55.     OCR's 2001 Guidance notified schools that a hostile educational environment can be created when students witness sexual harassment, stating: A hostile environment can occur even if the harassment is not targeted specifically as the individual complainant. For example, if a student, group of students, or a teacher regularly directs sexual comments toward a particular student, a hostile environment may be created not only for the targeted student, but also for others who witness the conduct.

56.     OCR's 2001 Guidance informed schools that, when a teacher is the harasser, students may not take action or even object, as students "may be encouraged to believe that a teacher has absolute authority over the operation of his or her classroom," and "may believe that any objections would be ineffective in stopping the harassment or may fear that by making objections he or she will be singled out for harassing comments or other retaliation."

57.     The 2001 Guidance also reminded schools they are responsible for taking prompt and effective action to stop and prevent the recurrence of a school employee's sexual harassment of a student. OCR stressed the importance of proper training for those in authority, stating:

> [S]chools need to ensure that employees are trained so that those with authority to address harassment know how to respond appropriately, and other responsible employees know that they are obligated to report harassment to appropriate school officials. Training for employees should include practical information about how to identify harassment and, as applicable, the person to whom it should be reported.

58.    In 2004, the U.S. Department of Education issued *Educator Sexual Misconduct: A Synthesis of Existing Literature,* a study that determined nearly 10% of children in U.S. public schools are subjected to sexual misconduct by a school employee.

59.    In January 2006, OCR issued *Dear Colleague Letter -- Sexual Harassment Issues,* to U.S. public schools, including Defendant District, stating, "[u]nfortunately, a significant number of students are still subjected to sexual harassment, which can interfere with a student's education as well as his or her emotional and physical well-being." OCR again reminded schools of their obligations "to take immediate and effective steps to end sexual harassment when it occurs, prevent its recurrence, and remedy its effects."

60.    On April 4, 2011, OCR sent *Dear Colleague Letter: Sexual Violence,* to all U.S. public schools, including the Defendant, that issued a "call to action" to the nation's schools because of "deeply troubling" data regarding school-place sexual violence. OCR stated, "Schools should not wait for the conclusion of a criminal investigation or criminal proceeding to begin their

13

own Title IX investigation and, if needed, must take immediate steps to protect the student in the educational setting."

61. On April 24, 2015, OCR issued *Dear Colleague Letter: Title IX Coordinators,* and *Title IX Resource Guide,* to all U.S. public schools, including Defendant District. OCR reminded schools of their obligation to designate at least one employee as a Title IX Coordinator who is responsible for coordinating the school's efforts to comply with and carry out the school's Title IX responsibilities, pursuant to 34 C.F.R. § 106.8(a). OCR stated, "In our enforcement work, OCR has found that some of the most egregious and harmful Title IX violations occur when a recipient fails to designate a Title IX coordinator or when a Title IX coordinator has not been sufficiently trained or given the appropriate level of authority to oversee the recipient's compliance with Title IX."

62. The Michigan Department of Education issued *The Role of the Title IX Coordinator in Human Resources Activities,* to all Michigan schools, including Defendant District, stating, "[a]lthough an educational agency's Human Resources personnel must take care to implement only policies and procedures that conform to Title IX requirements, the officially appointed Title IX coordinator has a responsibility to monitor agency human resources activities to assure compliance with the federal law."

14

63.     Upon information and belief, despite clear notice by the U.S. Supreme Court, Sixth Circuit, and U.S. Department of Education regarding the prevalence of school employee-against-student sexual harassment, the severe harm caused by such harassment, and the MPS District's obligations to prevent and remediate the effects of this harassment, at all times relevant hereto the MPS District failed to provide adequate training or education to administrators, teachers, staff, students, and parents regarding Title IX and school employee sexual abuse of children.

64.     Upon information and belief, at all times relevant hereto, the District (MPS) failed to provide training or education to administrators, teachers, staff, students, and parents on protecting students from sexual abuse, identifying child sexual harassment and abuse, recognizing grooming behaviors of sexual predators, interviewing victims and potential witnesses of abuse, investigating reports of child sexual abuse, remediating sexual harassment and abuse, and proper reporting of suspected sexual abuse to CPS and law enforcement.

65.     Upon information and belief, at all times relevant hereto, Defendant failed to provide training or education to administrators, teachers, staff, students, and parents on any then-existing written District policy or

protocol regarding school employee-against-student sexual harassment and/or Title IX.

66.     Upon information and belief, at all times relevant hereto, Defendant failed to designate a Title IX Coordinator who was properly trained and/or who was provided the appropriate level of authority to ensure that the District complied with its obligations after receiving notification and reports regarding the substantial likelihood that MURRAY would sexually harass female students, and even after receiving notifications and reports that he was, in fact, sexually abusing and harassing girls at Nelson Elementary, including Plaintiff.

67.     Defendant's lack of training is evidenced by, among other things, failing to conduct a Title IX investigation of MURRAY's reported sexual misconduct against children at Nelson Elementary, not even after receiving multiple credible reports; not interviewing a single student about MURRAY, not taking any immediate steps to deter or prevent MURRAY from abusing and harassing students, such as by increasing monitoring of MURRAY or, at the very least, requiring he keep his office door open and windows unblocked; not reporting MURRAY to CPS or law enforcement prior to September of 2018; not informing or involving the District's Title IX Coordinator immediately upon learning of MURRAY's inappropriate conduct; and not

16

informing parents or guardians that MURRAY reportedly inappropriately touched their daughters.

## COUNT I
## 42 U.S.C. § 1983 CIVIL RIGHTS CLAIM
## (AGAINST DEFENDANT MURRAY)
_____

68.    Plaintiff incorporates each and every preceding paragraph as though fully restated herein.

69.    At all times relevant to this action, Defendant MURRAY was an employee and/or agent of a public school district, was acting as a public-school counselor, and was acting under the color of Michigan State law.

70.    Plaintiff's constitutional rights to personal security and bodily integrity were clearly established and well-known to Defendant MURRAY at the time of his physical assaults of Plaintiff.

71.    Defendant MURRAY's actions deprived Plaintiff of her right to personal security and bodily integrity, including their right to be free from physical abuse at the hands of a public employee and Plaintiffs' substantive due process rights to a free, appropriate and least restrictive education possible in violation of Plaintiff's clearly-established civil rights, in violation of 42 U.S.C. § 1983.

72. Defendant MURRAY's conduct was in violation of the criminal code of the State of Michigan, and in violation of the policies and procedures that either were in effect or should have been in effect and in force in the Muskegon Public School District.

73. Defendant MURRAY's actions were not taken in good faith, but were performed for the purpose of causing harm and/or punishment, without a legitimate governmental or pedagogical purpose.

74. Defendant MURRAY affirmatively acted in a manner that misused his authority in order to sexually abuse Plaintiff, and as such, he created the danger posed to students, including Plaintiff.

75. It is shocking to the conscience that MURRAY would repeatedly use his agency and/or employment with MPS in order to sexually abuse female children, including Plaintiff.

76. As a result of Defendant MURRAY's physical abuse and misconduct, Plaintiff has suffered severe physical, psychological, and emotional injuries. Said injuries include, but are not limited to, anxiety, fright and shock, panic attacks, depression, loss of appetite, loss of sleep, embarrassment, mortification, physical pain and suffering, mental anguish, denial of social pleasures, as well as serious impairment to her academic and social development.

**WHEREFORE,** Plaintiff claims judgment of compensatory, punitive, and exemplary damages against Defendant in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, together with costs, interest, and attorney fees so wrongfully incurred.

### COUNT II
### 42 U.S.C. § 1983 CIVIL RIGHTS CLAIM
### (AGAINST DEFENDANT MPS AND GRAMM)
_____

77. Plaintiff incorporates each and every preceding paragraph as though fully stated herein.

78. Defendants MPS and GRAMM, with knowledge of Defendant MURRAY's behavior, and in the face of multiple complaints by students/parents of the Defendant MPS, acted with deliberate indifference of both the supervision of Defendant MURRAY and in their failure to protect the rights of the Plaintiff herein, as well as all other students in contact with Defendant MURRAY.

79. At all times relevant to this action, Defendant MURRAY was an employee and/or agent of a public school district, was acting as a public-school counselor, and was acting under the color of state law, and as an agent of Defendant MPS.

19

80. Plaintiff's constitutional rights to personal security and bodily integrity were clearly established and well-known to Defendants MPS and GRAMM at the time of the physical assaults of Plaintiff by Defendant MURRAY.

81. Defendants' actions deprived Plaintiff of her right to personal security and bodily integrity, including her right to be free from physical abuse at the hands of a public employee and the Plaintiff's substantive due process abuse at the hands of a public employee and the Plaintiff's substantive due process rights to a free, appropriate and least restrictive education possible. Thus, Defendants violated the Plaintiff's clearly-established civil rights, in violation of 42 U.S.C. § 1983.

82. Defendants MPS and GRAMM's employees and/or agents' conduct was in violation of the criminal code of the State of Michigan, and in violation of the policies and procedures that either were in effect or should have been in effect and in force in the Muskegon Public Schools, and Defendant MPS acted in a manner that was deliberately indifferent to the rights of the Plaintiff.

83. Defendants MPS and GRAMM's employees and/or agents' actions were not taken in good faith, but were performed with knowledge of

the harm being caused and with reckless disregard of the rights of the Plaintiff, and without a legitimate governmental or pedagogical purpose or excuse.

84.    As an actual and proximate result of Defendant MPS's and GRAMM's misconduct, Plaintiff has suffered severe physical, psychological, and emotional injuries. Said injuries include, but are not limited to, anxiety, fright and shock, panic attacks, depression, loss of appetite, loss of sleep, embarrassment, mortification, physical pain and suffering, mental anguish, denial of social pleasures, as well as serious impairment to her academic and social development.

**WHEREFORE,** Plaintiff claims judgment of compensatory, punitive, and exemplary damages against Defendants in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, together with costs, interest, and attorney fees so wrongfully incurred.

## COUNT III
### *MONELL* LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE AS TO RESPONSE TO SEXUAL ASSAULTS AS TO DEFENDANT MPS (42 U.S.C. § 1983)

_____

85.    Plaintiff incorporates each and every preceding paragraph as though fully stated herein.

86.    Defendant MPS failed to adequately train, discipline, and supervise Defendants MURRAY and GRAMM, promulgating and

21

maintaining de facto unconstitutional customs, policies, or practices rendering it liable for the constitutional violations alleged herein under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978).

88. At all times relevant, Defendant MPS knew or should have known that the policies, procedures, and training of Defendants MURRAY and GRAMM were inadequate for the tasks that each Defendant was required to perform.

89. At all times relevant, Defendant MPS failed to establish, implement, or execute adequate polices, procedures, rules, and regulations to ensure that their actions did not create or increase the risk of Plaintiff being exposed to sexual abuse, or to ensure that their teachers, counselors, agents, and other staff do not take actions that create or increase the risk of harm to the district's students, such as Plaintiff.

90. At all times relevant, Defendant MPS knew that its policies, procedures, customs, propensity and patterns allowed students to continue to be sent to a private room with MURRAY despite his known sexually abusive conduct, such that its actions created a risk of harm and/or an increased risk of harm to students, including Plaintiff.

91. Defendant MPS further violated Plaintiff's rights by:

a. Failing to have policies and procedures in place for the recognition of the signs of adult-student sexual abuse;

b. Failing to have policies and procedures in place for the reporting of suspected abuse of children by its agents and employees;

c. Failing to have policies and procedures in place for the investigation of suspected sexual abuse of children;

d. Failing to provide a grievance procedure for students to file complaints of sexual discrimination, including complaints of sexual violence. The procedures must include an equal opportunity for both parties to present witnesses and other evidence and the same appeal rights; and

e. Failing to have policies or procedures to notify parents of the outcome of complaints or outline any remedy therefore.

92.     Defendant MPS violated Plaintiff's constitutional rights by failing to properly train and supervise its employees as to mandated investigative and reporting requirements.

93.     By inadequately training and/or supervising their principals and counselors and having a custom or policy of deliberate indifference to the constitutional rights of their citizens, Defendant, MPS, encouraged and

23

cultivated the conduct which violated Plaintiffs rights under the Fourteenth Amendments of the United States Constitution, and provided clearance for MURRAY to commit his repeated acts of sexual abuse, thereby increasing the risk that Plaintiff would be exposed to MURRAY's sexual abuse.

94.    Defendants' actions and lack of actions were the actual and proximate cause of Plaintiff's injuries, emotional distress and psychological damage as described herein, and her character and standing in the community has suffered from the harassment fostered as a result of Defendant MPS's deliberate indifference to her constitutional rights.

**WHEREFORE,** Plaintiff claims judgment of compensatory, punitive, and exemplary damages against Defendant in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, together with costs, interest, and attorney fees so wrongfully incurred.

### COUNT IV
### VIOLATION OF 20 U.S.C. § 1681(a)
### (AS TO DEFENDANT MPS)
_____

95.    Plaintiff incorporates each and every preceding paragraph as though fully stated herein.

96.    Title IX provides that "No person in the United States shall on the basis of sex, be excluded from participation in, be denied the benefits of, or be

RASOR LAW FIRM, PLLC

subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

97.     The Department of Education requires schools that fall under Title IX's broad scope to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student [...] complaints alleging any action that would be prohibited by" Title IX regulations, including sexual assault. 34 C.F.R § 106.8(b); 28 C.F.R. § 54.135(b).

98.     Plaintiff was a student at Defendant MPS and a "person" under Title IX.

99.     Defendant MPS receives federal financial assistance for its education program and is therefore subject to the provisions of Title IX.

100.    Defendant MPS is required under Title IX to investigate allegations of sexual assault, sexual abuse, sexual harassment and/or sexually related misconduct.

101.    Title IX covers the aforementioned conduct in relation to students, employees, and third parties.

102.    Defendant MURRAY's unwanted, offensive sexual assaults upon Plaintiff were in violation of Title IX.

25

103.   Despite receiving multiple prior complaints from parents and/or students of MPS, MPS failed to take action to stop MURRAY's horrific sexual misconduct.

104.   Defendant MPS had actual and/or constructive notice of Defendant MURRAY's sexual misconduct.

105.   Defendant MPS failed to investigate and take corrective action as required by Title IX.

106.   Given the above, Defendant MPS, through its agents and employees involved in enforcing and complying with Title IX, acted with deliberate indifference to known acts of sexual misconduct, specifically to Defendant MURRAY's frequent sexual assaults upon female students.

107.   Defendant MPS failed to adequately investigate the reports of sexual molestation by MURRAY, simply stating that there was a lack of evidence to warrant disciplinary action.

108.   Because Defendant disregarded female student/parents' valid and serious complaints, it did not take any corrective action, furthering Defendant's deliberate indifference by the lack of a response.

109.   Defendant's response, or lack thereof, to student/parents' multiple complaints was unreasonable.

110. Defendant's failure to promptly and appropriately investigate, remedy, and respond to Defendant MURRAY's sexual misconduct after receiving notice of the same subjected Plaintiff to falling victim to MURRAY's acts.

111. That as a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity and has suffered mental anguish, physical and emotional distress, humiliation, mortification and embarrassment, as well as loss of professional reputation and loss of educational opportunity.

112. Pursuant to 42 U.S.C. § 1988 and 20 U.S.C. § 1681, Defendant is liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable under one or both the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendant, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as actual, compensatory punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

27

## COUNT V
## DISCRIMINATION VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2401, (AS TO ALL DEFENDANTS)

_____

113.   Plaintiff incorporates each and every preceding paragraph as though more fully stated herein.

114.   The Elliott-Larsen Civil Rights Act, M.C.L. § 37.2402 prohibits an educational institution from discriminating "against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of religion, race, color, national origin, or sex."

115.   Defendant MPS is an "Educational institution" and Defendant MURRAY is an "agent" pursuant to the Elliott-Larsen Civil Rights Act.

116.   Defendant GRAMM was an agent of the MPS at all relevant times.

117.   Defendant BOYS AND GIRLS CLUB is a "place of public accommodation" pursuant to the Elliott-Larsen Civil Rights Act.

118.   MURRAY repeatedly sexually assaulted Plaintiff over a period of several months and thereby created a sexually abusive and discriminatory educational environment at MPS.

28

119.   MURRAY repeatedly sexually assaulted Plaintiff over a period of several months and thereby created a sexually abusive and discriminatory place of public accommodation at the BOYS AND GIRLS CLUB.

120.   Defendant GRAMM, as an agent and in his official capacity with/in concert with Defendant MPS, discriminated against Plaintiff by refusing to investigate prior complaints of sexual abuse committed by MURRAY, effectively acquiescing to the conduct and allowing a sexually abuse environment to continue.

121.   By its actions and omissions, as alleged herein, Defendants were party to the sexual abuse, knowingly acquiesced in the creation of a sexually hostile and discriminatory educational environment, and failed to take required remedial measures, in violation of the Elliott-Larsen Civil Rights Act.

122.   As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described herein, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

123.   Pursuant to the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*, Defendants are liable to Plaintiff for all damages allowed under state

law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and reasonable attorney fees so wrongfully incurred, and grant further such relief as this Court deems fair and just under the circumstances.

## COUNT VI
## NEGLIGENCE
## (AGAINST BOYS AND GIRLS CLUB)
_____

124. Plaintiff incorporates each and every preceding paragraph as though more fully stated herein.

125. Defendant Boys and Girls Club held itself out to be a safe place for children that engaged in the supervision, care, and protection of children. Because Defendant Boys and Girls Club had adopted and/or assumed an express and/or implied duty to provide a reasonably safe environment for Plaintiff.

126.   Defendant Boys and Girls Club owed a duty of reasonable care to all minor persons, including Plaintiff, who were likely to come within the influence or supervision of Defendant MURRAY, in his role as an agent, supervisor, servant, and/or volunteer.

127.   Defendant Boys and Girls Club breached its duty of care in one or more of the following ways:

a.   Negligently hiring MURRAY as they knew or should have known that he posed a threat of sexual abuse to children;

b.   Negligently retaining MURRAY as they knew or should have known that he posed a threat of sexual abuse to children;

c.   Negligently directing MURRAY as they knew or should have known that he posed a threat of sexual abuse to children;

d.   Negligently supervising MURRAY as they knew or should have known that he posed a threat of sexual abuse to children;

e.   Failing to investigate the background of MURRAY before placing him in contact with children;

f.   "Covering up" and otherwise failing to disclose the harmful acts of MURRAY;

31

g. Failing to warn Plaintiff, her parents and/or legal guardians of MURRAY's conduct despite having constructive knowledge of sexual abuse;

h. Failing to warn Plaintiff, her parents and/or legal guardians of MURRAY's conduct despite having actual knowledge of sexual abuse;

i. Assigning MURRAY to have contact with Plaintiff despite having actual or constructive knowledge of sexual abuse;

j. Minimizing, ignoring, or excusing employee misconduct over a period of several years;

k. Failing to provide a safe environment to children and other members of the Boys and Girls Club.

l. Failing to train employees/agents/servants/volunteers to identify the signs of molestation by fellow employees;

m. Failing to implement and maintain effective policies and procedures to prevent sexual abuse of children;

n. Failing to investigate complaints of abuse properly;

o. Failing to report MURRAY's sexual abuse to police and Child Protective Services; and

p. Failing to exercise due care under the circumstances.

32

128. Such negligence was the foreseeable, direct, actual, and proximate cause of the occurrence and Plaintiff's injuries and damages.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as actual, compensatory punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

**COUNT VII**
**GROSS NEGLIGENCE**
**(AGAINST BOYS AND GIRLS CLUB)**
_____

129. Plaintiff incorporates each and every preceding paragraph as though more fully stated herein.

130. Defendants BOYS AND GIRL'S CLUB's acts and omissions, as previously described, were committed with complete and reckless disregard for, and with willful, wanton, and actual conscious indifference to, the rights, safety, and welfare of Plaintiff and the general public.

131. The nature of Defendant BOYS AND GIRL'S CLUB's acts and omissions were of such a nature as to constitute gross negligence and malice. Specifically, Defendant BOYS AND GIRLS CLUB undertook a continuous

RASOR LAW FIRM, PLLC

course of action in the form of conscious decisions, with subjective knowledge and awareness of the risks and hazards presented by each decision as discussed above and incorporated herein, to expose Plaintiff and others to sexual abuse and/or sexual assault, and exercised not even slight care or diligence.

132. When viewed objectively from the standpoint of Defendant BOYS AND GIRLS CLUB at the time of their occurrence, said acts and omissions involved reckless disregard of or indifference to an extreme degree of physical, mental, and psychological risk and danger, considering the probability and the magnitude of the potential harm to others.

133. Defendant BOYS AND GIRLS CLUB committed various acts and omissions constituting gross negligence, as outlined above.

134. Such gross negligence was the foreseeable, direct, actual, and proximate cause of the occurrence and Plaintiff's injuries and damages.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as actual, compensatory punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

RASOR LAW FIRM, PLLC

## COUNT VIII
## BREACH OF NON-DELEGABLE DUTY
## (AGAINST BOYS AND GIRLS CLUB)

135.   Plaintiff incorporates each and every preceding paragraph as though more fully stated herein.

136.   Plaintiff, as a minor, was placed into the care of Defendant BOYS AND GIRLS CLUB for the purpose of providing Plaintiff with a safe environment in which to receive supervision, care, and protection.

137.   Because Defendant BOYS AND GIRLS CLUB was entrusted with the care of Plaintiff, a minor child, there existed a non-delegable duty of care that went from Defendant BOYS AND GIRLS CLUB to Plaintiff and from Defendant BOYS AND GIRLS CLUB to Plaintiff.

138.   Since Plaintiff was a minor child, Defendant BOYS AND GIRLS CLUB were in the best position to prevent the abuse that Plaintiff suffered at the hands of MURRAY, and/or stop such abuse when they learned of it.

139.   Defendant BOYS AND GIRLS CLUB failed to prevent the abuse and harm Plaintiff suffered, and/or they failed to stop it once they were aware of or should have been aware of the abuse. This failure was a breach of Defendant BOYS AND GIRLS CLUB's non-delegable duties to Plaintiff.

RASOR LAW FIRM, PLLC

140.   As a foreseeable, direct, and proximate result of this breach, Plaintiff suffered significant injuries and long-lasting damages.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as actual, compensatory punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT IX
## BATTERY
## (AGAINST MURRAY)
_____

141.   Plaintiff reincorporates each and every preceding paragraph as though fully restated herein.

142.   Defendants MURRAY's conduct, as set forth above, constituted a willful and harmful or offensive touching of Plaintiff.

143.   Defendant MURRAY intended the act which caused the willful and harmful or offensive touching of Plaintiff, which evidences malicious intent, capricious action, and corrupt conduct that fell outside the scope of his duties as a school counselor.

36

144. As an actual and proximate result of Defendant's conduct, Plaintiff has suffered severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development.

**WHEREFORE,** Plaintiff claims judgment of compensatory, punitive, and exemplary damages against Defendant in an amount that rightfully compensates Plaintiff together with costs, interest, and attorney fees so wrongfully incurred.

### COUNT X
### ASSAULT
### (AGAINST MURRAY)
_____

145. Plaintiff reincorporates each and every preceding paragraph as though fully restated herein.

146. Defendant MURRAY'S conduct, as set forth above, constituted an unlawful use of corporal injury to Plaintiff by the use of force.

147. In the alternative, Defendant MURRAY'S conduct, as set forth above, constituted an exercise of force unlawfully directed toward Plaintiff.

148. The surrounding circumstances of that conduct created a well-founded apprehension in Plaintiff of imminent contact.

149. The surrounding circumstances of that conduct created an apparent present ability for Defendant MURRAY to accomplish that contact.

150. As an actual and proximate result of Defendant MURRAY's conduct, Plaintiff has suffered severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development.

**WHEREFORE**, Plaintiff claims judgment of compensatory, punitive, and exemplary damages against Defendant in an amount that rightfully compensates Plaintiff together with costs, interest, and attorney fees so wrongfully incurred.

## COUNT XI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST MURRAY)
_____

151. Plaintiff incorporates each and every preceding paragraph as though more fully restated herein.

152. Defendant MURRAY's conduct, as set forth above, was intentional or reckless, extreme, outrageous, and of such character as to be intolerable in a civilized society.

153. Defendant MURRAY's conduct was for an ulterior motive or purpose, including but not limited to causing Plaintiff to suffer severe

emotional distress, including and/or to satisfy his abhorrent desire to abuse adolescent girls, including Plaintiff.

154.  Defendant MURRAY's conduct directly and proximately resulted in the Plaintiff suffering extreme emotional distress that has manifested in physical and emotional ways as described herein.

**WHEREFORE**, Plaintiff claims judgment of compensatory, punitive, and exemplary damages against Defendant in an amount that rightfully compensates Plaintiff together with costs, interest, and attorney fees so wrongfully incurred.

## COUNT XII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (AGAINST MPS)

155.  Plaintiff incorporates each and every preceding paragraph as though more fully restated herein.

156.  Defendant MPS's conduct, as set forth above, was intentional or reckless, extreme, outrageous, and of such character as to be intolerable in a civilized society.

157.  Defendant MPS's conduct was for an ulterior motive or purpose, including but not limited to causing Plaintiffs to suffer severe emotional distress.

158.   Defendant MPS's conduct directly and proximately resulted in the Plaintiff suffering extreme emotional distress.

**WHEREFORE,** Plaintiff claims judgment of compensatory, punitive, and exemplary damages against Defendant in an amount that rightfully compensates Plaintiff together with costs, interest, and attorney fees so wrongfully incurred.

**COUNT XIII**
**GROSS NEGLIGENCE**
**(AS TO DEFENDANT GRAMM)**

159.   Plaintiff incorporates each and every preceding paragraph as though fully restated herein.

160.   As school principal, Defendant GRAMM owed Plaintiff a duty of care to act for the safety of the public while acting as an agent of MPS and specifically owed Plaintiff duties, which duties include, but are not limited to, obeying all laws, statutes, and local ordinances in a way that is not grossly negligent.

161.   In light of the reports of prior victims of MURRAY's. Defendant GRAMM knew or had reason to know that Defendant MURRAY's physically abusive conduct, as set forth above, would result in Plaintiff suffering severe emotional and psychological distress.

162.   Notwithstanding the foregoing, Defendant GRAMM took ineffective action to stop MURRAY from sexually abusing female students, which recklessly placed Plaintiff in great danger.

163.   Defendant GRAMM is not entitled to governmental immunity for the reason that his conduct constitutes gross negligence as defined by Michigan law, in that:

    a.    Defendant had actual knowledge of the extreme risk of emotional and psychological harm to Plaintiff as a result of his physical abuse; and,

    b.    Notwithstanding awareness of this risk, Defendant engaged in the abusive conduct as set forth above;

    c.    Because Defendant MURRAY had been the subject of several prior complaints of inappropriate touching/molestation, the Plaintiff's injury was foreseeable and avoidable had Defendants not disregarded the severity; and

    d.    Defendant's ineffective and reckless actions, in light of the great risk of harm, demonstrated a substantial lack of concern for whether injury resulted when he acted as set forth above.

164.   As a result of Defendant's conduct, Plaintiff has suffered severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, as described herein.

RASOR LAW FIRM, PLLC

165. That Defendant GRAMM's acts were proximate cause of Plaintiff's injuries, and the most immediate, efficient, and direct causes of Plaintiff's injuries, as described herein.

**WHEREFORE,** Plaintiff claims judgment of compensatory, punitive, and exemplary damages against Defendant in an amount that rightfully compensates Plaintiff together with costs, interest, and attorney fees so wrongfully incurred.

**COUNT XIV**
**GROSS NEGLIGENCE**
**(AS TO DEFENDANTS MURRAY)**
_____

166. Plaintiff incorporates each and every preceding paragraph as though more fully restated herein.

167. As Plaintiff's school counselor, coach, and afterschool monitor, Defendant MURRAY owed Plaintiff a duty of reasonable care for her safety, which duties include, but are not limited to, obeying all laws, statutes, and local ordinances in a way that is not grossly negligent.

168. Defendant MURRAY deliberately breached his duty of care to Plaintiff by violently sexually assaulting her, numerous times, as described herein.

169. Defendant MURRAY is not entitled to governmental immunity for the reason that his conduct constitutes gross negligence as defined by Michigan law, in that his reckless actions, in light of the great risk of harm, demonstrated a substantial lack of concern for whether injury resulted when he acted as set forth above.

170. At all times relevant hereto, Defendant MURRAY's conduct was so reckless that it demonstrated a substantial lack of concern for whether an injury resulted when he acted as set forth above.

171. That Defendant MURRAY's acts were proximate cause of Plaintiff's injuries, and the most immediate, efficient, and direct causes of Plaintiff's injuries as described herein.

**WHEREFORE,** Plaintiff claims judgment of compensatory, punitive, and exemplary damages against Defendant in an amount that rightfully compensates Plaintiff together with costs, interest, and attorney fees so wrongfully incurred.

### COUNT XV
### VIOLATION OF CHILD PROTECTION LAW
### MCL 722.621, *ET SEQ*
### (AGAINST MPS AND GRAMM)
_____

172. Plaintiff incorporates each and every preceding paragraph as though more fully restated herein.

RASOR LAW FIRM, PLLC

173. That all of the above-described facts, allegations contained and previously alleged herein pertaining to Plaintiff constitute child endangerment and/or child neglect and/or reasonable cause to suspect child abuse or endangerment, as defined under MCL 722.622.

174. That pursuant to the MCL 722.621 *et seq*, Defendants MPS, by and through its agents, and GRAMM, had a statutory duty to report suspected child abuse and/or endangerment of the children at Nelson Elementary School.

175. Plaintiff was a foreseeable victim protected under the laws of the State of Michigan, specifically MCL 722.621 *et seq*.

176. Defendants MPS, by and through its agents, and GRAMM are classified by the statute as mandatory reporters.

177. Defendants MPS and GRAMM failed to report the endangerment caused by the reports of sexual abuse by MURRAY to Child Protection Services.

178. Plaintiff was in imminent danger of bodily and/or mental injury.

179. Defendants knew that Nelson Elementary students were under threat, and yet, allowed Plaintiff to be directly in the crosshairs of that threat.

180. Based on the information Defendants possessed as described herein, Defendants were required to make a report to Child Protection Services.

44

181. Defendants had actual and/or constructive knowledge of the threat posed by MURRAY toward the students that he abused and took affirmative action to place the Plaintiff in danger.

182. Defendants' failure to report the sexual abuse of students to Child Protection Services was the proximate and actual cause of Plaintiff's damages as alleged herein.

183. MCL§ 722.633 requires that any person responsible and who does not report suspected child endangerment and/or child neglect and/or has reasonable cause to suspect child abuse or endangerment is civilly liable for damages proximately caused by the failure to report the same. Each Defendant herein is a mandatory reporter under the act.

184. Defendants had reasonable cause to suspect the child abuse or neglect pursuant to MCL 722.623, to make an immediate report as required to be made by telephone or by online reporting or both.

185. Defendants breached their duty to report abuse and neglect.

186. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, as further described herein.

**WHEREFORE,** Plaintiff claims judgment of compensatory, punitive, and exemplary damages against Defendants in an amount that rightfully compensates Plaintiff together with costs, interest, and attorney fees so wrongfully incurred.

## COUNT XVI
## NEGLIGENT HIRING, RETENTION, AND SUPERVISION
## & RESPONDEAT SUPERIOR/VICARIOUS LIABILITY
## (AGAINST EDUSTAFF)

_____

187.   Plaintiff incorporates each and every preceding paragraph as though fully restated herein

188.   At all relevant times, MURRAY was employed by EDUSTAFF and was acting in the course of his employment as a school counselor.

189.   Under Michigan law, EDUSTAFF is vicariously liable for the negligence of its employee, acting within the scope of his employment.

190.   Defendant EDUSTAFF knew or should have known of the sexually abusive characteristics and propensities of Defendant MURRAY due to the multiple reports received of same over the years.

191.   Defendant EDUSTAFF hired, employed, trained, and/or retained MURRAY as an employee and/or agent despite that it knew or should have known of his propensity to sexually abuse adolescent girls and that MURRAY

would work regularly alone, unsupervised with adolescent girls like the Plaintiff.

192.   Defendant EDUSTAFF failed to adequately train and supervise MURRAY despite that it knew or should have known of his propensity to engage in sexually abusive conduct directed at female students.

193.   Upon information and belief, EDUSTAFF's lack of policies and procedures provided inadequate safeguards to deter MURRAY from committing such offensive conduct as he did during the times relevant hereto.

194.   Had EDUSTAFF had adequate policies and procedures pertaining to MURRAY's employment and/or supervision, he would not have been in a position to effectuate his sexual desires upon innocent female students like the Plaintiff.

195.   Defendant EDUSTAFF's inadequate policies and procedures regarding the above-referenced conduct established actual and/or constructive notice of the foreseeability of MURRAY's conduct at issue herein.

196.   Despite EDUSTAFF's actual and/or constructive knowledge of these propensities and/or likelihood of such acts occurring, Defendant failed to take any reasonable precautions that would prevent this kind of conduct and/or ensure Plaintiff and others alike were safe.

47

197. Defendant EDUSTAFF failed to adequately train and supervise MURRAY despite that it knew or should have known of his propensity to engage in sexual misconduct and that he would improperly utilize his position to abuse female students.

198. Defendant EDUSTAFF's failures here indicate its blatant disregard for female students like Plaintiff and the risk that being sexually abused while attending school poses when alone with a predator like MURRAY.

199. As a direct and proximate result of the actions and omissions of EDUSTAFF, and EDUSTAFF's agent/employee, MURRAY, Plaintiff has suffered damages as stated herein, including without limitation severe and permanent psychological damage, physical harm, and emotional distress.

200. Plaintiff suffered severe emotional and physical trauma as a result of EDUSTAFF's negligence, which has physically manifested in the following ways: she suffers anxiety to the extent that she has panic attacks (which involve heart palpitations, faintness, and pain), nervousness, shortness of breath, loss of sleep, loss of appetite, and headaches.

**WHEREFORE,** Plaintiff claims judgment of compensatory, punitive, and exemplary damages against Defendant in an amount that rightfully

48

compensates Plaintiff together with costs, interest, and attorney fees so wrongfully incurred.

Respectfully submitted,

*/s/James B. Rasor* .
James B. Rasor (P43476)
Attorney for Plaintiffs
**RASOR LAW FIRM, PLLC**
201 East Fourth Street
Royal Oak, Michigan 48067
(248) 543-9000
Dated: March 16, 2023        jbr@rasorlawfirm.com

## **DEMAND FOR JURY TRIAL**

**NOW COMES** Plaintiff, by and through her counsel, RASOR LAW FIRM, PLLC, AND hereby demands a trial by jury in the above-captioned cause of action.

Respectfully submitted:

/s/ James B. Rasor_____
James B. Rasor (P43476)
Attorney for Plaintiffs
**RASOR LAW FIRM, PLLC**
201 E. Fourth Street
Royal Oak, Michigan 48067-3846
(248) 544-9300/(248) 543-9050 Fax
jbr@rasorlawfirm.com
Dated: March 16, 2023